## TAYLOR *v.* MOFFATT.

If a judicial officer, whether possessed of a general or a special jurisdiction, act erro-neously or even oppressively in the exercise of his authority, an individual at whose suit he acts is not answerable, as a trespasser, for the error or misconduct of the offi-cer. But if a judicial officer whose jurisdiction is special and limited, transcend his authority and act in a case of which he has no cognizance, his proceedings are *coram non judice,* and no person can justify under them.

The defendant, in an action of false imprisonment, justified under a writ of attach-ment ordered, at his instance, by a Circuit judge. The writ was issued against the plaintiff, for a contempt in disobeying a writ of injunction granted by the judge. The injunction was granted, and the writ of attachment was ordered and issued, in va-cation. *Held,* that the defence was insufficient; the judge having no authority, in vacation, to order the writ of attachment.

ERROR to the *Knox* Circuit Court.

HOLMAN, J.—*Taylor*, claiming the exclusive privilege of vending merchandise in the town of *New-Harmony*, filed a bill against *Moffatt* and others, charging *Moffatt* with a violation of this privilege by vending merchandise in said town; and pray-ing an injunction. An injunction, agreeably to the prayer of the bill, was awarded by the president judge of the Circuit Court, in vacation. The writ of injunction having been served upon *Moffatt*, and it having been made to appear to the satis-faction of the judge, by the affidavits of *Taylor* and others, that *Moffatt* had disobeyed the writ and continued to vend mer-chandise as formerly, the judge, by his order, directed the clerk of the Circuit Court, to issue an attachment against *Moffatt* for his contempt of the writ of injunction. The attachment was issued, and *Moffatt* was immediately committed to prison until the further order of the Court. For this commitment, he brought this action of false imprisonment against *Taylor*, at whose in-stance the attachment had been ordered. *Taylor*, together with a plea of not guilty, pleaded the proceedings in chancery, the judge's order, the attachment, &c., in justification; to which

*Moffatt* demurred, and had judgment. The jury, on the trial of the general issue, assessed the plaintiff's damages at 3,000 dollars; and judgment was given on the verdict.

The merits of the defence made by *Taylor*, depend on the authority of the judge to order the attachment for the contempt. If the judge was acting within his jurisdiction, the plea of *Taylor* was a bar to the action, without any reference to the manner in which the judge's authority was exercised. Much has been said, in this case, about the ordering of the attachment without giving *Moffatt* an opportunity of being heard, and about the commitment for an unlimited time; but we conceive that these are subjects that cannot affect the merits of *Taylor's* defence. For if a judicial officer, whether possessed of a general or a special jurisdiction, act erroneously, or even oppressively, in the exercise of his authority, an individual at whose suit he acts is not answerable, as a trespasser, for the error or misconduct of the officer. But if a judicial officer, whose jurisdiction is special and limited, transcend his authority, and act in a case of which he has no cognizance, his proceedings are *coram non judice*, and no person, much less a suitor, can justify under them. Nor do we consider it necessary to determine a question that has been raised in this case, as to the authority of a president judge, in vacation, to award injunctions for any other purpose except to enjoin proceedings at common law. But passing this question, and fixing our attention on the power of the president judge, in vacation, to order an attachment to enforce obedience to a writ of injunction which he had previously ordered,—we find before us a question, in the determination of which, we are but indirectly aided either by *English* or *American* decisions.

In *England*, and in many of the *United States*, the Courts of chancery are distinct from the common-law tribunals, and are continually open for the exercise of any necessary part of their jurisdiction. With us, the Circuit Court, with a general common-law jurisdiction, possesses all the chancery powers known to our law; but it is open only at stated periods fixed by law, and can take cognizance of no subject at any other time. This Court, at its regular terms, agreeably to the act of assembly by which it is organized, possesses a general authority, as a Court of chancery, to issue any process that may be necessary

for carrying its powers into effect, according to the usages of Courts of chancery; and the president judge, in the absence of the two associates, is competent to hold this Court. Had the grant of chancery powers terminated here, neither the president judge, nor the two associates, nor all together, would have possessed any chancery powers whatever in vacation; but, in order to a proper distribution of justice, it was considered necessary that there should be, at all times, a tribunal that might act in cases of emergency, both at common law and in chancery. Certain powers were therefore conferred on the judges individually, and certain others on the president judge or the two associates. Among the latter is the power of awarding injunctions.

Now it may be considered as a general rule, that a grant of power to a Court, or a judge, to award process, includes a power to enforce obedience to that process, by punishing disobedience. Hence, a Court of chancery exercises a general authority to issue attachments to punish contempts of its process; and there is no doubt, but that our Circuit Courts possess this power; but they can exercise it in term time only. The president judge, when sitting as a Circuit Court, possesses this power in the fullest extent known to our law. His jurisdiction is then considered of a general and unlimited nature. But when he is acting in vacation his situation is different: his jurisdiction is special and limited. He cannot be strictly said to be acting as a Court of chancery, inasmuch as the two associates, in the presence of each other, possess as extensive powers as he does; and they are not, even in term time, competent to hold a Court of chancery. So that it may be questioned whether he, when adjudicating on the subject-matter of an injunction regularly brought before him, possesses any further powers than those specially conferred by the act of assembly regulating the proceedings in granting injunctions; and such as may be necessary to prevent his being disturbed while he is thus officiating. But when he has completed an order for an injunction, and has closed his sitting, his power over the subject must be at an end. The case has passed from him into the Circuit Court, and obedience to the writ of injunction is to be enforced in the same way, as if it had been awarded by the Circuit Court. He has no time nor place given him by the law, when or where he can

judicially take any further notice of the subject, until the next term of the Circuit Court; but he is in the same situation, as to an exercise of chancery powers, as the Circuit Court is in vacation. Nor does this view of the case impose any peculiar hardship upon suitors. A complainant who has thus obtained an injunction, is in the same situation as if he had obtained it in open Court. If the writ is disobeyed, he must wait until the next term of the Circuit Court before he can obtain process to enforce obedience to the writ, or to punish an individual who may have disobeyed it.

In this case, as we learn from the plea of *Taylor*, the judge awarded the injunction at his chambers, on the 29th of *September*, 1827. The writ of injunction was issued on the 1st of *October*; the affidavits show a vending of merchandise by *Moffatt* on the 4th, 5th, and 6th of the latter month; and the order for the attachment is dated at the judge's chambers on the 8th. So that, from the foregoing view of the subject, the judge had no jurisdiction of the case at the time he ordered the attachment. The order was a nullity, and *Taylor* could not justify under it. The plea was no bar to the action, and the Circuit Court very properly sustained the demurrer. See an extensive view of the doctrine of chancery attachments in *Yates* v. *The People*, 6 Johns. R. 337, and *Yates* v. *Lansing*, 9 Johns. R. 395.

It was said by the plaintiff's counsel, in the argument of this case, that the damages are excessive, and that a new trial ought to have been awarded; but the statement in the transcript of the record, that a new trial was applied for in the Circuit Court and refused, is no part of the record, not having been made so by a bill of exceptions; and we have taken no notice of it.

*Per Curiam.*—The judgment is affirmed, with 1 *per cent.* damages and costs.

*Hall, Dewey, Law,* and *Judah,* for the plaintiff.
*Howk,* for the defendant.