Boaz *et al. v.* Tate.

––––––––– • –––––––––

## BOAZ ET AL. *v.* TATE.

FALSE IMPRISONMENT.—When an arrest is made upon valid process, issued by a court having jurisdiction, trespass for false imprisonment will not lie, though the arrest be maliciously procured by the prosecutor without probable cause.

MALICIOUS PROSECUTION.—If an imprisonment be under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution.

FALSE IMPRISONMENT.—If an imprisonment is extra-judicial, without legal process, it is false imprisonment.

SAME.—*Malice.*—Where the gravamen of an action is for arresting and imprisoning the plaintiff without legal process, averments in the complaint relative to the malicious purposes of the defendant are only by way of aggravation.

CITY MARSHAL.—*Power to Make Arrest.*—A city marshal, under the act of 1867 (3 Ind. Stat. 75, sec. 29), has authority to arrest, without process, any person, who within his view shall commit any crime or misdemeanor, or violate any ordinance of the city, and detain such person in custody until the cause of the arrest can be investigated. If the court having jurisdiction of the offence be not in open session, he may confine the person arrested in the city prison or county jail, until he can be brought before the court; and this shall be done at the earliest period.

SAME.—The right of a city marshal to arrest and imprison in the county jail carries with it the right, on the part of the jailer, to receive and detain the prisoner.

SAME.—*Statute Construed.—Power to Receive Pledge for Appearance.*—Sections 38 and 40, 2 G. & H. 397, relate only to arrests made under warrants issued from courts of record, and do not authorize a city marshal or police,

Boaz *et al. v.* Tate.

man, who has made an arrest on view, to accept of property or money as a pledge or security for the appearance of the person arrested to answer the charge.

ARREST ON VIEW.—If an offence is committed in view of an officer having authority to make an arrest on view, he may arrest the offender immediately, or as soon thereafter as he conveniently can.

FALSE IMPRISONMENT.—*Pleading.—Answer.*—Where a complaint for false imprisonment alleges that the plaintiff was imprisoned on more than one charge, an answer justifying the arrest on only one of the charges is bad.

SAME.—*Malice.—Probable Cause.*—In an action for false imprisonment, it is not necessary, to entitle the plaintiff to recover, that he should prove malice or want of probable cause.

SAME.—*Pleading.—Evidence.*—In an action for false imprisonment a defence of justification in making the arrest and imprisonment is not available under the general denial.

SHERIFF.—*Acts of Deputy.*—A sheriff is liable for the acts of his deputy or jailer within the scope of his authority.

FALSE IMPRISONMENT.—*Malice.—Evidence.*—Where officers, having charge of a person under arrest, have no authority to fix the bail and take a recognizance, or to receive in pledge any article of value as security for the appearance of the prisoner, their failure to take bail or receive such pledge is no evidence of malice.

ARREST.—*City Marshal.—Jailer.*—If a city marshal or police officer, having authority to make an arrest on view and to commit the prisoner to jail until such time as he can be brought before the proper authority, make an arrest and take the prisoner to a jail with the declaration that he has been arrested for an offence committed on view, that declaration stands in the place of a mittimus in other cases, and the jailer should receive the prisoner without regard to the question of his guilt or innocence.

CONSPIRACY.—*Liabity of Conspirators for Acts of Each Other.*—If there is a conspiracy of two or more to commit a tort, each one engaged in the conspiracy is liable for the acts of the other done in pursuance of the conspiracy. So each is liable for the acts in which he participates.

POLICE OFFICER.—*Jailer.*—If police officers make an arrest and bring the prisoner to the jailer, and inform him of the arrest for a criminal offence committed in their view, the jailer, by receiving the prisoner as such, does not become liable for the former wrongful or oppressive acts of the police officers.

SAME.—If such jailer afterward unnecessarily put the prisoner in a filthy place, or otherwise exceed his authority, the police officers are not liable for such acts, unless they advise, or in some manner participate in, such oppressive excess of authority.


From the Morgan Circuit Court.

*S. H. Buskirk, J. Hanna, F. Knefler, C. F. McNutt,* and *G. W. Grubbs,* for appellants.

*J. W. Gordon, J. C. Robinson,* and *W. R. Harrison,* for appellee.

OSBORN, C. J.—This was an action commenced by the appellee against the appellants, in the Marion Circuit Court, and by change of venue taken to the Morgan Circuit Court, where it was tried by a jury, resulting in a verdict in favor of the appellee, in the sum of nine hundred dollars. A motion was filed, in which the appellants and each of them moved the court for a new trial, and assigned nineteen causes for the motion. It was overruled, and judgment was rendered on the verdict. Exceptions were taken to the action of the court in overruling the motion for a new trial, and a proper bill of exceptions was filed. We do not deem it necessary at this time to state the causes for a new trial set out in the motion.

The errors assigned are, 1st. That the court erred in overruling a demurrer to the second paragraph of the complaint. 2d. That the court erred in sustaining appellee's demurrers to the answer of the appellants to the complaint. 3d. That the court erred in overruling the motion for a new trial.

The original complaint contained one paragraph. To that the defendants filed separate answers of general denial. A jury was impanelled, and after hearing a part of the evidence, on motion of the defendants, leave was granted to them to file an amended and additional answer, and the jury was withdrawn. Afterward, on motion of the plaintiff, he had leave to file an amended complaint. Under that leave he filed a second paragraph. A motion was made to strike out parts of the amended complaint, which was overruled, and an exception taken. A joint answer was then filed to the whole complaint, in two paragraphs; first, the general denial; second, a justification. After an unsuccessful motion, made by plaintiff, to strike out parts of the second paragraph of the answer, a motion was made and sustained, requiring the defendants to separate and number the paragraphs, to which they excepted and filed a bill of exceptions. Under that ruling and requirement of the court, the

defendants separated the second paragraph into three, making the answer consist of four paragraphs. The plaintiff filed separate demurrers to the second, third, and fourth paragraphs of the answer, which were sustained, to which the defendants excepted.

No question is made as to the sufficiency of the first paragraph of the complaint. Neither the demurrer nor the assignment of errors reaches that. The demurrer was filed to the second paragraph, and the ground assigned was, that it did not contain facts sufficient to constitute a cause of action, and that there was a misjoinder of causes of action set out in the two paragraphs.

The first paragraph of the complaint is for a false imprisonment. The second contains a full history of the alleged grievances of the appellee against the appellants. It is very long and, in some things, unlike anything that we have ever met with before. We have had some difficulty in determining what is the gist or gravamen of the action in that paragraph. It alleges that the defendant Boaz was acting Lieutenant of police, and the defendant Umversaw was acting Marshal of the city of Indianapolis; that they attempted to provoke and induce him to violate the penal laws of the State and the ordinances of the city, that they might have a pretence for arresting him; failing to do so, they arrested him on the false charge of profane swearing, and took him to the county jail, when the other defendant, Parker, by his jailer and turnkey, joined in the conspiracy against him, and received him from them, and confined him in jail as a prisoner, refusing to receive bail until ordered to do so by the city judge; that when he had procured bail, they preferred other false charges against him and refused to discharge him until he gave bail. It also states that the appellee was possessed of property, both real and personal, of the value of several thousand dollars; that the arrest and imprisonment were unlawfully and maliciously made on false charges and without warrant, or written, or reasonable, or probable cause; that he was afterward tried and acquitted on two of the charges; and that as to the other, it was shown

on his trial for that, that fifteen minutes had elapsed after it had been committed, and that the offence had entirely passed before the arrest was made. There are many allegations of abuse and oppression and details of circumstances, which we think it unnecessary to repeat in this opinion. They are charged to have been done maliciously and without reasonable or probable cause.

It will be observed that it is alleged that the appellee was arrested and taken to jail by the city officers and there imprisoned, without any warrant and without reasonable or probable cause. The gravamen of the action, we think, is for the illegal arrest and imprisonment, and not for malicious prosecution. All that is said about the motive of the defendants for the arrest and imprisonment, or the circumstances connected with or attending them, can make no difference with the real ground or cause of action, only by way of aggravation. Although the code has abolished all distinctions between actions at law and suits in equity, and provided that there shall be but one form of action for the enforcement of private rights and the redress of private wrongs, legal principles remain unaltered. There has been no attempt made to change or modify them. The rights of parties remain and are adjudicated upon and settled under the same rules and regulations, except as to the form or name of the action. Before the code, if the plaintiff mistook the form of action, or sued at law when his remedy was in equity, or filed a bill in chancery when he should have sued in an action at law, he failed in his action without regard to its merits. Such results are now avoided, and parties may demand and courts grant relief according to the allegations and proofs. Before the code, the judicious lawyer investigated and made a thorough examination of the law, before commencing suit, to enable him to determine, amongst other things, to which class of actions his belonged, and under which form of the class it was to be brought. In some particulars, different rules were applicable in the different forms of actions. Then, the evidences of a thorough lawyer were

manifested by his skill as a special pleader; by the accuracy and terseness of his statement of his client's case. It seems to us that prudence should dictate to the pleader now the exercise of the same care and skill in the statement of a cause of action or ground of defence as before the code, although the consequences of a failure to do so are less fatal. The confusion growing out of the trial of a cause defectively stated, or when several causes of action are improperly joined, is the same now as before. The court is not relieved from making the proper distinctions on the trial.

In *Seeger* v. *Pfeifer,* 35 Ind. 13, DOWNEY, J., on page 15, says: " The distinction between false imprisonment and malicious prosecution is pretty well established. When the arrest is upon valid process issued by a court having jurisdiction, trespass for false imprisonment will not lie, though such arrest is maliciously procured by the prosecutor without probable cause." In *Colter* v. *Lower,* 35 Ind. 285, on p. 286, the same judge says : " If the imprisonment is under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution. If it has been extra-judicial, without legal process, it is false imprisonment." He refers to *Turpin* v. *Remy,* 3 Blackf. 210, and *Johnstone* v. *Sutton,* 1 T. R. 544. " Trespass is the only form of action for an assault and battery where the action is brought by the party injured." 1 Saund. Pl. & Ev. 142. Case lies in general to recover damages for torts not committed with force actual or implied. 1 Saund. Pl. Ev. 715. So where process, upon which the party is arrested or held, is irregular, trespass was the proper form. 1 Saund. Pl. & Ev. 717. Without accumulating authorities, we think the rule was correctly laid down in *Seeger* v. *Pfeifer* and *Colter* v. *Lower, supra,* and we must hold the second paragraph good as for a false imprisonment, and not for malicious prosecution. The gravamen of the action is for arresting and imprisoning the plaintiff without

legal process, and the averments relative to the malicious purposes of the defendants and the circumstances of the arrest and imprisonment are only by way of aggravation.

Both paragraphs are for the same cause of action, false imprisonment. The rules of law relating to actions of trespass for false imprisonment, and not for malicious prosecution, must govern in deciding the case. We suppose that this view was not considered in the court below. Perhaps the appellee did not intend to frame the second paragraph so as to make it an action for false imprisonment exclusively; but by his averments, the fact of an arrest under legal process is absolutely excluded. Manifestly, the attention of the learned judge before whom the cause was tried was not called particularly to the paragraph during the trial.

The appellants filed joint answers to the whole complaint, and justified as public officers under the laws of the State and certain ordinances of the city of Indianapolis. Their official character is alleged to be the same as stated in the second paragraph of the complaint, and the grounds of the arrest, the violation of the criminal laws of the State and the ordinances of the city on view of the marshal, and that he and the lieutenant of police arrested him for the offences named; that the offence was committed and the arrest made in the night time, so that there was no court in session before whom he could be taken; that they immediately conveyed him to the jail of the county and then requested the turnkey of the sheriff to receive him as a prisoner, on the charge for which he was arrested; that the turnkey did so receive him, after he was informed of the reason of his arrest, and not before, when he took him into his custody and committed him to jail, and there detained him for one hour, when he was released on bail by order of the city judge; that the plaintiff was convicted of the charge for which he was arrested, on being arraigned the next morning; and that he was guilty as charged. The defendants aver that all they did in the premises was wholly without malice;

Boaz *et al. v.* Tate.

that they had a reasonable and probable cause for arresting him, and deny all conspiracy to injure the plaintiff. It is also alleged that the jail of the county was the city jail at the time of the arrest and imprisonment, and that Parker as sheriff and jailer had the custody of all prisoners for violation of the city ordinances. Certain ordinances are set out in full, under which the defendants professed to act. It is further alleged that in making the arrest, Umversaw and Boaz did not use any more force than was absolutely necessary.

The answer consists of four paragraphs; the general denial and three affirmative paragraphs, each of the affirmative paragraphs setting up the particular offence of which the plaintiff was alleged to have been guilty, and for which he was arrested. In their general features they are the same. Separate demurrers were sustained to those paragraphs.

The city marshal has authority to arrest within the city, without process, all persons, who, within his view, commit any crime or misdemeanor, or violate any ordinance of the city and take them before the mayor or other officer having jurisdiction of the offence with which the persons so arrested are charged, and detain them in custody until the cause of the arrest has been investigated. He may also, without any writ or order of attachment, confine any person guilty of any offence against the penal laws of the State or ordinances of the city, in the city watch-house, or prison, or county jail, if the arrest be made when the court having jurisdiction of the offence with which the person so arrested is charged shall not be in open session, until there shall be an opportunity to bring him before the proper court for trial, not exceeding eighteen hours, unless by order of the court, etc. 3 Ind. Stat. 75, sec. 29.

The ordinances of the city require that the patrolmen of her police force shall arrest and take before the mayor, with or without process, all persons caught in the act of violating any ordinance of the city, or penal law of the State, and

that they shall notify parties ignorant of the ordinances regulating the use of the streets, alleys, and sidewalks, and if they persist in violating the same, to arrest and take them before the mayor or commit to jail without process. The marshal or his assistants or any police officer of the city are also empowered and enjoined to arrest, with or without warrant, all persons who, in the night time or on Sunday, shall be found rioting, fighting, or in any manner disturbing the public peace within the city, and commit such offender to jail or the city prison for safe-keeping until complaint against him can be made to the mayor.

Each of the paragraphs to which demurrers were sustained stated that the plaintiff had been guilty of a violation of some criminal law of the State, or ordinance of the city, stating that the offence was committed on view of the appellant, the city marshal, and that the arrest was made " then and there;" that the city had no jail or prison of its own, and that the county jail had been adopted for that purpose ; that the appellant Parker, through his turnkey, received the appellee from the city officer having him in custody on such arrest, in the course of his duty as jailer, after being told that they had arrested him for the offence in view, using no more force than was necessary.

We are referred by the appellee to *Low* v. *Evans*, 16 Ind. 486, to show that the arrest was without authority. That case was decided under the act of 1857, for the incorporation of cities. Under that act, the marshal was the chief ministerial officer of the city, and invested with the powers of a constable therefor. He was authorized to execute and return all process directed to him by the mayor or city judge, or order of the common council, and he might also execute process directed to him by any justice of the peace of the city. It was his duty to suppress all riots and disturbances of the peace, and arrest persons guilty of the same. 1 G. & H. 221, sec. 23. His authority under the act of 1867 is much more extensive. 3 Ind. Stat. 75, sec. 29, *supra.* By that act he has authority to arrest without process all per-

sons who, within his view, shall commit any crime or misde-
meanor, or violate any ordinance of the city, and detain them
in custody until the cause of the arrest can be investigated.
If, when the arrest shall be made, the court having jurisdic-
tion of the offence shall not be in open session, he may confine
the person so arrested, in the city watch-house, or prison, or
county jail, until there shall be an opportunity to bring him
before the proper court or officer, which he shall do at the ear-
liest period.   We think this last act confers ample authority
upon the marshal to make the arrest and commit the person
arrested to prison, the act having been committed within his
view and the arrest made in the night time.   We think it
not unreasonable to hold that, ordinarily, no court would be
open in the night.   The right in the marshal to imprison in
the county jail carries with it the corresponding right in the
jailer to receive and retain the prisoner.   In *Vandeveer* v.
*Mattocks*, 3 Ind. 479, it was held that a constable, as a con-
servator of the peace, had authority to arrest a person
charged with a breach of the peace committed within his
view, and to detain him a reasonable time, for the purpose
of taking him before a magistrate; and in *Low* v. *Evans*,
*supra*, on page 489, the judge delivering the opinion of the
court said: "If the power exists in the ministerial officer to
arrest on view, it is subject to the statutes of the State, and
to general and known principles of law."   We think the
statute has wisely conferred the authority upon the marshal
to arrest without warrant, for violations of the city ordi-
nances, as well as the criminal laws of the State, when com-
mitted within his view, and to imprison for a reasonable time,
until a trial can be had.   Without such power it would be
quite difficult to apprehend and bring to justice violators of
the ordinances.   They are often committed in the night and
at other times when it is impossible to get a warrant authoriz-
ing the arrest before the offender will escape and thus avoid
punishment.

The appellee insists that the officers arresting him and the
sheriff's bailiff were authorized and required to take bail,

and to accept for that purpose the money and property offered by him. He refers us to 2 G. & H. 397, secs. 38 and 40. The first provides, that any officer authorized to execute a warrant in a criminal action may take the recognizance and approve the bail. That does not authorize him to fix the amount of the bail. The other section provides, that the defendant may, in the place of giving bail, deposit with the clerk of the court to which he is held to bail the sum mentioned in the order. That section did not authorize the officers having the appellee in custody to accept of property or money as a pledge or security for his appearance to answer the charge. Those sections of the statute were not intended to apply and have no reference to arrests like the one under consideration. They relate entirely to arrests made under warrants issued from courts of record.

The appellee also insists that the arrest must be made immediately after the commission of the offence, to justify the officers for making it without warrant and as on view, and we are referred to *Commonwealth* v. *Carey*, 12 Cush. 246, to sustain him. That does not sustain the doctrine contended for. What was held in that case was, that a constable or other peace officer could not arrest one without a warrant for a crime proved or suspected, if such crime were not an offence amounting in law to a felony. In Addison Torts, 557, it is said: "If an assault be committed within view of a constable, he has authority to arrest the offender at the time, or as soon after as he conveniently can, so as to come within the expression 'recently,' not only to prevent a further breach of the peace, but also to secure the offender for the purpose of taking him before a magistrate." The complaint alleges that fifteen minutes elapsed between the commission of the offence and the arrest, but it does not appear that it could have been made earlier. We think the answer not defective for failing to answer that allegation.

The complaint alleges that the defendants arrested and imprisoned and detained him on the pretended and false charge of profanity; that after he had given bail for that

offence, two other false charges were trumped up and preferred against him, and that he was unlawfully, etc.,. detained in jail on each of these charges. Each of the paragraphs of the answer justifies the arrest and imprisonment for a single offence, charged in the complaint, but fails to confess and avoid or deny the others, although purporting to answer the whole complaint. For that cause they are bad, and the demurrers to them. were correctly sustained.

An answer had been filed, containing a paragraph justifying each of the several acts of trespass alleged in the complaint. On motion of the plaintiff, the court required the defendants to separate and number the paragraphs, so that each paragraph should contain only a justification for one alleged trespass. The defendants excepted to the ruling of the court and saved the question by a bill of exceptions, but failed to assign it as error, and the question is not before us for our decision.

The cause was submitted to a jury for trial on the general denial, and a verdict rendered for the appellee, as hereinbefore stated.

It will not be necessary to notice all the reasons assigned for a new trial in the appellants' motion. Some are not available reasons for a new trial, and some are abandoned in this court. Those relied upon for a reversal of this cause relate. to instructions given and refused and the damages assessed by the jury.

The court was asked to instruct the jury, that in order to maintain the action, they must find from the evidence that the acts of the appellants complained of must have been done maliciously and without probable cause. We think the court committed no error in refusing such instructions. The action was for false imprisonment, and not malicious prosecution, and it was not necessary to prove malice or want of probable cause. *Colter* v. *Lower*, 35 Ind. 285. The averments of malice did not change the gravamen of the action. They only tended to show aggravation. We do not think it necessary to copy the instructions relating to that question,

or refer to the numerous authorities examined. The case last cited is decisive on that point. We are satisfied with and adhere to it.

The court committed no error in refusing to give the instructions asked relative to the protection of the officers, in making the arrest, as a full and complete defence to the action. Demurrers had been sustained to the answers justifying the arrest and imprisonment. Such defence was not available under the general denial. Sec. 91, 2 G. & H. 113; *Wood* v. *Mansell,* 3 Blackf. 125; *Lair* v. *Abrams,* 5 Blackf 191; *Johnson* v. *Cuddington,* 35 Ind. 43.

The eighth instruction asked by appellants and refused required the court to instruct the jury, that if Parker was not personally present when the appellee was arrested and imprisoned and did not know of such arrest and imprisonment until after his discharge, and that if it was not by his procurement, they should find for him. The instruction was correctly refused. Parker was liable for the acts of his deputy, or jailer, within the scope of his authority. Addison Torts, 931.

The appellants in their eleventh instruction asked the court to charge the jury, that they had no authority to fix the bail and take a recognizance of the appellee, until the amount had been fixed by the city judge, and that they had no right to receive in pledge any article of value as security for his appearance, and that their failure to do so was no evidence of malice. The court refused to give it, but gave the following as a substitute: "I think the jailer had no right to fix bail, therefore his refusal to fix the bail was not evidence of malice; but the fact that he had no right to fix bail would not authorize him to put the plaintiff into a filthy place, amongst drunken men, even if he had the right to detain him in custody."

The complaint alleged that the appellee had offered to give to the appellants property in pledge for his appearance to answer the charge for which he was then under arrest; that they had refused to take it and discharge him, and had

maliciously detained him in prison. He had also offered evidence to sustain it. The object of the charge was to inform the jury that they had no authority to fix the bail or take property in pledge for his appearance, and that their failure to do either was no evidence of malice. In the substituted charge the court told the jury that they had no right to fix the bail, but omitted to tell them that the appellants had no right to receive the pledge. They were told that the failure to fix the bail was no evidence of malice, but they were not told that the refusal to receive the pledge and discharge the appellee was not evidence of malice. We have already shown in a former part of this opinion that they had no authority to do either. Malice was an important element in the action to increase the damages, and we think the appellants were entitled to have the charge given as it was asked.

We have said that the marshal had authority to arrest when the offence was committed in his view and, under certain circumstances, commit to jail; that such authority necessarily conferred upon the jailer the right to receive and imprison the prisoner. If he had the right to receive the prisoner when brought to him by the marshal with the declaration that he had been arrested for an offence committed on view, that declaration would stand in the place of a mittimus in other cases, and it would be the duty of the jailer to receive him as a prisoner, without regard to the question of his guilt or innocence.

The tenth instruction asked and refused recognized this doctrine. But it went further and told the jury that in such case they must find for Parker, the sheriff, and the court did right in refusing it, because there was no answer justifying his acts as jailer.

There is one other question in the case, and that is how far the appellants are liable for the acts of each other. If there was a conspiracy between them or any two of them, each of them engaged in the conspiracy is liable for the acts of the other, done in pursuance of the conspiracy. So

each is liable for acts in which he participated. If the police officers arrested the appellee and brought him to the jail, and then delivered him to the jailer as a prisoner, informing him of the arrest for a criminal offence committed on their view, by receiving him as jailer, he did not thereby become liable for their prior wrongful or oppressive acts. And if the jailer unnecessarily put him into a filthy place, or otherwise thereafter, whilst holding him in custody, exceeded his authority, the police officers did not become liable with the jailer, unless they advised or in some manner participated in such oppression or excess of authority.

The judgment of the said Morgan Circuit Court is reversed, with costs; and the cause is remanded, for further proceedings in pursuance of this opinion, with leave to both parties to amend their pleadings.

BUSKIRK, J., having been of counsel was absent.
*Petition for a rehearing overruled.*